535 P.2d 1309

William A. BLIVEN, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Verde Valley Landscape, Respondent Employer,

Sentry Insurance, a Mutual Company, Respondent Carrier.

No. 1 CA–IC 1138.

Court of Appeals of Arizona, Division 1, Department C.

May 29, 1975.

Rehearing Denied June 18, 1975.
Review Denied July 10, 1975.

Davis & Eppstein by Robert W. Eppstein, Tucson, for petitioner.

Greg L. Folger, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Lewis & Roca by Merton E. Marks, Phoenix, for respondent employer and respondent carrier.

## OPINION

NELSON, Presiding Judge.

The sole question presented to the Court in this case is whether the evidence taken by the hearing officer supports his conclusion that bi-lateral hernias suffered by William A. Bliven, petitioner herein (Bliven), were not causally related to an industrial accident suffered by Bliven on May 2, 1973 and therefore not compensable under a claim referable to that accident. It is our opinion that the evidence supports the hearing officer's findings and award and we therefore affirm the award.

Viewing the evidence in a light most favorable to sustaining the award of the Industrial Commission of Arizona, Mi-cucci v. Industrial Commission of Arizona, 108 Ariz. 194, 494 P.2d 1324 (1972), these are the facts necessary for the view of the decision of the Industrial Commission in this matter.

On May 2, 1973, Bliven was accidentally injured when run over by a Ditch Witch (a trench digging machine). The machine rolled over his foot and also passed over his body between the ankle and knee after he fell. Initially it appeared that both his knee and back might be severely injured, perhaps broken or crushed. Hospitalization and X-rays revealed, however, that there were no broken bones. He was discharged from the hospital on May 4, 1973 and released for return to light work on May 14, 1973.

During this period after his accident, Bliven was treated by Dr. Christopher A. Guarino, an orthopedic surgeon. He examined Bliven at the hospital on May 2d, 3d and 4th and in his office on May 14th, June 6th and June 8th. Dr. Guarino had occasion to X-ray and examine Bliven's knee, back and pelvic area. Bliven did not complain of, nor did Dr. Guarino discover an indication that Bliven was suffering pain or discomfiture from bi-lateral hernias. There is no indication of complaint of hernia while Bliven was hospitalized. Although his wife testified to the contrary, Bliven himself testified that he never noticed any pain or bulging in his groin area until after he returned to work on May 14, 1973, and that he had never complained about pain to anyone else prior to returning to work.

Bliven noticed pain in his testicles and groin area after he returned to work, particularly when he was riding in a pickup truck over rough terrain. He complained about it to his employer, his employer's wife, his co-workers and his own wife. He was told to see his family doctor, Ben Terry, D.O., which he did on May 30, 1973. The primary reason for this initial visit was to get clearance to go water skiing with his wife and his employer and wife, Mr. and Mrs. Larry Harwell, the fol-

lowing weekend. He in fact got a note from Dr. Terry which was admitted into evidence dated May 30, 1973, indicating he could return to employment to tolerance and that Dr. Terry was of the impression he had a "Right Inguinal area strain".

Following the water skiing weekend, at which time Bliven was engaged in water skiing and lifting Mrs. Harwell, who was pregnant, from the boat to the shore one time, Bliven returned to Dr. Terry, who in turn referred him to Charles R. Ganzer, D.O., a surgeon. Dr. Ganzer diagnosed a bi-lateral hernia and recommended surgical repair. Surgery was accomplished on June 12, 1973.

Hernias are specifically classified for purposes of workmen's compensation by A.R.S. § 23–1043. Dr. Ganzer's testimony clearly shows Bliven's hernias were of the kind set out in A.R.S. § 23–1043, subsection 2, supra, having a congenital weakness component. This being the case, the hernias are not compensable unless it is proved:

"(a) That the immediate cause, which calls attention to the presence of the hernia, was a sudden effort or severe strain or blow received while in the course of employment.

"(b) That the descent of the hernia occurred *immediately* following the cause.

"(c) That the cause was accompanied or *immediately* followed by severe pain in the hernial region.

"(d) That the facts in subdivisions (a), (b) and (c) of this paragraph were of such severity that they were noticed by the claimant and *communicated immediately* to one or more persons." A.R.S. § 23–1043, subsection 2, supra. [Emphasis supplied]

The burden of proof of these required elements is, of course, upon the claimant. In re Estate of Bedwell, 104 Ariz. 443, 454 P.2d 985 (1969). Since the type of congenital hernia referred to in A. R.S. § 23–1043(2), supra, can occur with any sudden effort, severe strain or blow, whether suffered at work or elsewhere, it is our opinion that the critical legislative intent regarding the compensability of hernias is that their work relationship be immediately apparent and established. We view the word "immediately" as used in A.R.S. § 23–1043(2) above to mean generally within minutes or hours, and not the twelve day period which is supported by the evidence in this case. No other general time frame would insure the implementation of the legislative intent. See generally: Dewitt v. Magma Copper Company, 16 Ariz.App. 305, 492 P.2d 1243 (1972), and cases cited therein re giving effect to legislative intent.

We have not herein expressed, either directly or indirectly, any view as to other possible causes, either industrially related or otherwise, of Bliven's hernias. This matter is now before the Industrial Commission of Arizona by virtue of a subsequent claim.

The award is affirmed.

STEVENS and WREN, JJ., concurring.